Joe W. BURKETT, Jr., Appellant,

v.

The CITY OF TEXARKANA, Texas, et al., Appellees.

No. 8178.

Court of Civil Appeals of Texas, Texarkana.

Aug. 28, 1973.

Rehearing Denied Oct. 9, 1973.

Joe W. Burkett, Jr., pro se.

Clayton Hutchins, City Atty., Howard Waldrop, Atchley, Russell, Waldrop & Hlavinka, Texarkana, for appellee.

CHADICK, Chief Justice.

The City of Texarkana, Texas, by action of its City Council rezoned Block 7, Rochelle Heights Addition to the City, from a classification of "SF–2" (single family residence district) to "2F–2" (two-family dwelling district). The change permitted two-family dwellings (duplex houses) on lots containing a minimum area of 3,000 square feet. Prior to rezoning only single-family residences upon lots having a minimum area of 7,200 square feet had been permitted. The rezoned area is a rectangular platted City block, bounded upon two sides by opened, improved streets and on the other two sides by platted but unopened extensions of existing City streets.

Doctor J. E. Rorie and Joe W. Burkett, Jr., as plaintiffs, instituted a suit in a District Court of Bowie County, naming as defendants the City of Texarkana, its City Council, Mayor, City Manager and Building Inspector. The relief sought was:

"1. That the defendant City of Texarkana, its officers, agents, servants, employees, and attorneys, after hearing, be temporarily enjoined and upon a final hearing hereof, be permanently enjoined from (a) issuing to any person, firm, or corporation, any permit for, or otherwise permitting, any building upon or use of any portion of Block 7, Rochelle Heights, other than as specified in Sec. SF–2, entitled single-family residence district of the Zoning Ordinance of the City of Texarkana, passed and approved

on September 14, 1970; and from (b) enforcing or attempting to enforce, in any manner, the provision of its ordinance, passed and approved on January 22, 1973, amending said comprehensive zoning ordinance of September 14, 1970, insofar as that amendment relates to Block 7, Rochelle Heights Addition.

"2. That upon final hearing the said amendatory ordinance can be adjudged to be null and void and of no force or effect.

"3. For cost of suit.

"4. For such other and further relief, special and general, at law or in equity, to which they may show themselves justly entitled."

A temporary restraining order as prayed by plaintiffs was entered the day suit was filed, and the application for temporary injunction was set in conformity with rules governing such procedures. Prior to the temporary injunction hearing, Superior Realty Company, a partnership, was permitted to intervene as a party-defendant. Following hearing, the trial judge entered a written order denying the temporary injunction and dissolving the restraining order theretofore granted. Only Joe W. Burkett, Jr., has perfected an appeal from such interlocutory order.

Mr. Burkett, a practicing attorney, represented himself in this litigation and filed an informal brief, as permitted by Tex.R. Civ.P. 385(d). The Burkett brief dispensed with formal points of error and argues that the trial court abused its discretion in denying the application for temporary injunction. Whether or not the trial judge abused (misused) his discretion is the question to be resolved in this appeal. Janus Films, Inc. v. City of Fort Worth, 163 Tex. 616, 358 S.W.2d 589 (1962); Manning v. Wieser, 474 S.W.2d 448 (Tex.Sup.1971). In his brief the appellant appears to undertake the burden of showing (1) that the City had no legal authority regardless of the evidence or other circumstances shown by the record, to make the zoning change in question, and (2) that the evidence of invalidity of the ordinance was of such conclusive nature that the plaintiffs in the trial court were entitled to have, as a matter of law, the temporary injunction prayed for.

■■ That the rezoning change on its face constituted *spot zoning* apparently is the basis of the contention that the City had no power whatever to enact the amendatory rezoning ordinance. It has frequently been said that *spot zoning* is arbitrary and void. Hunt v. City of San Antonio, 462 S.W.2d 536 (Tex.Sup.1971); Weaver v. Ham, 149 Tex. 309, 232 S.W.2d 704 (1950); Barrington v. City of Sherman, 155 S.W.2d 1008 (Tex.Civ.App. Dallas 1941, writ ref'd w. o. m.). However, the term is not a word of art, rather it is descriptive of the process of singling out a small parcel of land for a use classification different and inconsistent with that of the surrounding area, for the benefit of the owner of such property and to the detriment of the rights of other property owners. See Rodgers v. Village of Tarrytown, 302 N.Y. 115, 96 N.E.2d 731 (1951); Rathkopf, The Law of Zoning and Planning, 3d Ed. Vol. 1, p. 26–2; 63 Tex.Jur.2d Zoning, Sec. 31. The *Hunt, Weaver* and *Barrington* cases, as well as City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477 (1955) support this generalization that *spot zoning* is arbitrary and void but in each case this question is decided by an examination of the facts in the particular case. On its face, the zoning ordinance does not show it was passed for the benefit of a particular property owner, or in disparagement of the rights of the appellant or other property owners. The evidence will be noticed in subsequent discussions. It is sufficient at this point to say that the record does not show as a matter of law the rezoning ordinance was void as impermissible *spot zoning*.

■ Preliminary to consideration of the contention that the evidence in its en-

tirety mandated the entry of a temporary injunction as a matter of right, certain aspects of the city zoning function and authority should be noticed. The foundations of a valid zoning ordinance is its substantial relationship to public health, safety, morals, or general welfare of the community. *Hunt,* supra. Once an ordinance is enacted, it is deemed valid and must stand as an exercise of the city's police power, unless it is shown not to have the substantial relationship mentioned. *Hunt, Weaver,* and *City of Waxahachie,* supra. And, as said in City of Waxahachie, supra,

"If reasonable minds may differ as to whether or not a particular zoning restriction has a substantial relationship to the public health, safety, morals or general welfare, no clear abuse of discretion is shown and the restriction must stand as a valid exercise of the city's police power. City of Corpus Christi v. Jones, Tex.Civ.App., 144 S.W.2d 388, error dism., correct judgt. Otherwise expressed by the court in the case just cited, if the issue of validity is fairly debatable courts will not interfere."

Also it is settled that a change of condition is not prerequisite to a change in zoning when the change bears the required substantial relationship to public health, welfare, etc. Baccus v. City of Dallas, 450 S. W.2d 389, (Tex.Civ.App. Dallas 1970, writ ref'd n. r. e.); City of University Park v. Benners, 485 S.W.2d 773 (Tex.Sup.1972).

■ The pleadings attacked a presumptively valid ordinance. It therefore became appellant Burkett's burden to produce evidence tending to prove the ordinance had no substantial relationship to public health, safety, morals, or general welfare of the Texarkana community; otherwise, in the absence of proof the trial judge would have been required, for that reason, to deny the application for temporary injunction. For the purpose of discussion it will be assumed that Burkett tendered evidence tending to prove the ordinance did not bear the requisite relationship to public health, etc. Proof of such fact as a matter

of law requires evidence so clear and cogent that reasonable minds would not disagree as to its effect; and such fact must be the only conclusion reasonably to be drawn from the evidence. 56 T.J.2d Trial Sec. 212. If the evidence fell below this standard and an issue of fact was raised, the trial judge was entitled to exercise the lawful discretion vested in him and either grant or deny the application for temporary injunction in accordance with the facts found.

The record shows that an entire city block is being reclassified to a use similar, in that it is residential, to the prior classification and not to a totally different use inconsistent with the prior classification. It is noteworthy that such rezoning affects an entire city block and is not confined to a strategically located lot or parcel of land therein as is often the situation in *spot* zoning cases. There is evidence in the record from experts whose qualifications are not impeached, and others, tending to prove that housing of the type permitted by the questioned ordinance was needed in the city; that it would be economically impractical to develop the block as single-family residences. Witensses pointed out that the block had become less desirable for single family residences because of the proximity of highly developed commercial property on State Line Avenue, two blocks distant, which was in the process of being widened and rebuilt, and pointed to a large number of vacant lots in the area and the dearth of single-family residences constructed under prior zoning, to support their vouchment. State Line Avenue is expected to become a major traffic artery. An opinion that there was a trend toward apartment zoning and the building of two-family housing in the general area was tendered in evidence. Also, another expert testified that a change to two-family use would halt substantial deterioration in the adjoining neighborhood and that a change in zoning would not adversely affect the population and traffic density in the zoned area, as well as that the change would result in improvement of a drainage problem therein.

246

█ The nature of the zoning change and evidence tending to show the ordinance would halt deterioration in adjoining neighborhoods, would develop undeveloped areas and not adversely affect the present use, and would improve drainage, is not striking insofar as its cogency and weight are concerned. Nevertheless, facts are tendered by such evidence tending to show the ordinance had a substantial relationship to the public welfare of the City of Texarkana. As suggested, the evidence is not particularly cogent, but nevertheless, it is in the record and the trial judge was entitled in the exercise of his function to resolve the facts as he impliedly did. It also is of significance that a temporary injunction was denied but a trial on the merits will be afforded the appellant if he pursues relief by way of a permanent injunction; denial of temporary relief simply indicates that the trial judge was doubtful that an ordinance should be nullified on the basis of the evidence adduced in the preliminary hearing.

It cannot be said as a matter of law that the trial judge misused or abused his discretion, therefore the judgment of the trial court is affirmed.